UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK MCNELIS,
                    Plaintiff,

vs.                                              CIVIL NO. 2:08-CV-12529

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,    DISTRICT JUDGE ARTHUR J. TARNOW
          Defendant                 MAGISTRATE JUDGE. STEVEN D. PEPE
_____/


**REPORT AND RECOMMENDATION**

### I.    BACKGROUND

Plaintiff, Patrick McNelis brought this action under 42 U.S.C. § 405(g) to challenge a

final decision of the Commissioner denying his application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act.  Both parties have filed motions for summary

judgment,[1] which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the

following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be

**GRANTED** and Defendant's Motion for Summary Judgment be **DENIED**.

### A.    <u>Procedural History</u>

Plaintiff filed an application for DIB on August 9, 2005, alleging an onset date of May

15, 2004. (R. 74). The application was denied on November 22, 2005. (R. 28). Plaintiff filed a

---

[1] Plaintiff filed a response to Defendant's motion for summary judgment (Dkt. #22) which was docketed and titled as such, yet the relief sought is for summary judgment seeking a remand for further proceedings.  Accordingly, the Court construes the response to be Plaintiff's cross motion for summary judgment.

timely Request for Hearing on January 10, 2006 and the hearing was held on November 16, 2006 in Port Huron, Oklahoma (sic) before ALJ Ethel Revels (R. 32, 304). Evan Zagoria, an attorney, represented Plaintiff at the hearing and Richard Szydlowski testified as the Vocational Expert ("VE"). (R. 304).  In a decision dated May 17, 2007, the ALJ denied Plaintiff's application and found Plaintiff not disabled. (R. 19-26).  Plaintiff filed a Request for Review of the hearing decision on May 24, 2007, which was denied by the Appeals Council on May 16, 2008, making the ALJ's decision the final decision of the Commissioner. (R. 3-5, 13); 20 C.F.R. § 404.981.

B.    **Background Facts**

1.    ***Plaintiff's Testimony and Statements***

Plaintiff was born on September 22, 1944 and was 60 years old at his alleged disability onset date. (R. 74, 307). Plaintiff graduated high school and completed some college credits.  His weight has fluctuated between 201 pounds and 243 pounds, and at times he has been diagnosed as obese.  (R. 119, 295, 133).  Plaintiff alleges disability due to glaucoma and diabetes mellitus. (R. 21).

Plaintiff claims he is unable to do his past work in carpentry finishing because he has difficulty reading numbers on a tape measure and transferring them to a block of wood.  (R. 309).  Plaintiff checks his blood pressure 3 to 4 times a day and takes his medications, but has not switched to insulin because he is afraid of needles.  (R. 311-12).  Plaintiff has side-effects from his medication including fatigue, blurry vision and frequency of urination and bowel movements.  (R. 312).  Plaintiff estimated that he must use the bathroom twice an hour, or three times an hour if his blood pressure is high, which happens regularly.  Plaintiff is constipated

occasionally and gets diarrhea.  (R. 313).  Plaintiff has accidental bowel movements 4 to 5 times

a month, and stated that he has about two minutes warning before he has to use the bathroom.

(R. 313, 332).  When Plaintiff's blood sugar is high, 70 percent of the time, he feels fatigue, lazy

or tired, and when his blood sugar is too low, 15 percent of the time, he feels scared so that he

gets the shakes or cold chills, and gets nervous and tired.  (R. 313-14).  Plaintiff stated that he

does not have the energy to complete a normal work-day at a level of 4-5 out of 10.  (R. 314).

Plaintiff could not work at a job where he sits for a large portion of the day because he would get

tired, and standing would hurt his legs.  (R. 315).  Plaintiff lies down when tired and naps

approximately 2 to 3 times a day for 1 to 1.5 hours; without these naps, he is unable to function.

Since 2004, Plaintiff has had 3 or 4 surgeries on his eyes, and he described his vision as

blurry and getting worse.  (R. 316-17).  Plaintiff could not see the judge clearly when she was

approximately ten feet away.  (R. 317).  Plaintiff must read with large print and hold the book

close.. He can only read for 4 or 5 minutes before his eyes "start running".  (R. 318).  Plaintiff

stated that he is not able to receive cornea transplant which his doctors do not recommend due to

his diabetes which might interfere with adherence of the cornea (R. 318).

Plaintiff is unable able to watch television, again because of his blurry vision, instead he

listens to it (R. 319).  Including blurry vision, Plaintiff has difficulty with depth perception and

peripheral vision (R. 321).

As to daily activities, he is able to shave himself with an electric razor only, spend time

with his daughter, listen to the radio, walk around the backyard and take clothes out of the dryer.

(R. 322-23).  On Sundays he attends church and occasionally goes out for the evening with his

wife to socialize with others.  He can sit comfortably in a recliner for about a half hour to forty-

3

five minutes until he needs to use the bathroom (R. 323).  He finds walking on carpeted floor easier and less painful for his feet than walking on a hard floor (R. 324).

### 2.  *Medical Evidence*

Plaintiff has been treated by Imad Jarad, M.D., for diabetes mellitus, hypertension, hyper-lipidemia, shortness of breath and benign prostatic hyperplasia ("BPH") since at least November 5, 1999. (R. 116-40).  On March 22, 2001, Plaintiff was noted to be obese and to suffer from diabetes mellitus with an "out of control" blood sugar level at 228, for which he was given Glucovance, and he was complaining of BPH symptoms. (R. 133).[2]  In 2001, Plaintiff was doing better on Glucovance but was complaining of constipation and had increased polyurea, nocturia and frequency.  Plaintiff's resting blood sugar was 142. (R. 131-32). In 2002, Plaintiff was still on Glucovance with increased polyurea, nocturia and frequency, a high glycohemoglobin at 9.2, a high HGB A1C high at 7.1-7.8, and high glucose level at 153-176. (R. 128-29, 231-32). In 2003, Plaintiff's blood sugar was high at 200-388, for which insulin was considered, he had a slight increase in BPH, and he was positive for polyurea and nocturia with high HGB A1C at 7.1-9.3. (R. 125-26, 229). On February 17, 2004, Plaintiff had increased BPH symptoms, but they had decreased some on Doxazosin 4 mg, which was then increased to 8 mg daily. (R. 124). His resting blood sugar was 294, whole blood glucose was 202 and his Glucovance was increased, and his HGB A1C was high at 8.7. (R. 124, 227). On April 16, 2004, Plaintiff's diabetes was still not controlled with his blood sugar at about 200 with a resting blood sugar of 317, and insulin was again considered. (R. 123). On May 5, 2004, Plaintiff's blood sugar was

---

[2] Most common BPH symptoms involve changes or problems with urination, including a hesitant, interrupted, weak stream, urgency and leaking or dribbling, and more frequent urination, especially at night.

4

still not under control; however his blood sugar had dropped on his home monitor to less than

150 and he did not want to switch to insulin. (R. 122). His HGB A1C was high at 8.0 and his

whole blood glucose was high at 181. (R. 226). Blood tests taken on June 24, 2004 revealed that

Plaintiff's HGB A1C was high at 7.2 and his whole blood glucose was high at 156. (R. 225).

By March 7, 2005, Plaintiff's blood sugar had continued to fluctuate, occasionally as

high as 200, his fasting blood sugar on that date was 163, and he was still on a maximum dose of

Glucovance and Actos. (R. 120-21). Plaintiff reported fatigue and tiredness, and his BPH was

plus one. (R. 120-21). His HGB A1C was high at 6.8 and his whole blood glucose was high at

143. (R. 224).

On June 21, 2005, Plaintiff reported increased shortness of breath with minimum exertion

after a 15 pound weight gain. (R. 119). Plaintiff was assessed with shortness of breath, his Actos

was discontinued due to fluid overload, he was started on Lasix, and his diabetes was non-

controlled, therefore his Glucovance was increased to 2 tabs and he would be switched to insulin

if his blood sugar continued to run high. (R. 119). His HGB A1C was high at 7.3 and his whole

blood glucose was high at 161. (R. 223).

On July 5, 2005, Plaintiff had shortness of breath with exertion and uncontrolled diabetes

with a resting blood sugar of 158. (R. 118, 191-92). On August 2, 2005, Plaintiff continued to

have shortness of breath with exertion, he was positive for back pain, and he had mild

osteoarthritis. (R. 117). On August 4, 2005 Plaintiff underwent a stress test due to shortness of

breath and palpitations with normal results. (R. 193). On September 12, 2005, Plaintiff had

complaints of increased shortness of breath. (R. 116). Plaintiff's fasting blood sugar was 183. (R.

116).  His HGB A1C was high at 6.9 and his whole blood glucose was high at 148. (R. 222).

Plaintiff has been treated at the University of Michigan Hospital for traumatic glaucoma in the left eye, ocular hypertension in the right eye, pseudophakia, diabetes mellitus, central cornea scar, and amblyopia since at least October 23, 2003, when Plaintiff's vision was 20/200 in the right eye and 20/50 in the left eye.  (R. 245-26).  On January 6, 2004, he was admitted to the Hospital with a diagnosis of visually significant cataracts.  (R. 142-87, 261-74).  Plaintiff underwent a cornea phacoemulsification with intraocular lens implantation in the right eye.  (R. 290-91, 261-74).  By March 11, 2004, Plaintiff reported complaints of blurred vision and light sensitivity in the left eye since his cataract surgery.  (R. 143-46).  Upon examination the next day, Plaintiff was found to have moderate ptosis greater in the right eye and his visual acuity was 20/50 in both eyes.  (R. 147).  On April 19, 2004, Plaintiff complained that his eyes were blurry when he tries to read, complained of aching and throbbing often, and he was very sensitive to light.  (R. 149).  The physician opined that his difficulty reading was related to blood sugar.  (R. 149-50).  On April 11, 2005, Plaintiff's Humphrey visual field had worsened.  (R. 160-61).  On May 4, 2005, Plaintiff came in for an urgent visit due to one week of throbbing behind his left eye as well as blurred visual acuity; his acuity was found to be 20/70 on the right and 20/50 in the left eye.  (R. 163-64).  On June 6, 2005, Plaintiff noted improvement in his left eye but continued headache behind the right eye as well as increased intraocular pressure and symptoms in the left eye.  (R. 165-66).  On July 11, 2005, Plaintiff had running and blurry vision in his left eye for 2 to 3 weeks, and his eyes were infected.  (R. 167).  On August 18, 2005, Plaintiff complained of continued blurry vision in the left eye.  (R. 169).

On September 13, 2005, Plaintiff was admitted to the University of Michigan Hospital for a trabeculectomy with mitomycin in the left eye due to traumatic glaucoma.  (R. 247-60, 288-

6

91, 173).  On September 19, 2005, Plaintiff had complaints of fogged vision in the in the left eye and his visual acuity was 20/50 in the right eye but 20/300 in the left eye.  (R. 175-76).  On September 20, 2005, Plaintiff's visual acuity was 20/400 in the left eye.  (R. 177).  On September 26, 2005, Plaintiff had continued complaints of blurry vision in the left eye with visual acuity of 20/40 in the right eye but 20/400 in the left eye.  (R. 179).  On October 3, 2005, Plaintiff's physician noted that his intraocular pressure was good however visual acuity was not improving in his left eye.  (R. 181-82).  On October 12, 2005, Plaintiff's left eye was still poor with a dull ache on and off, and increased intraocular pressure.  (R. 183-84).  On November 23, 2005, Plaintiff's visual acuity in the right eye was 20/50 and 20/70 in the left eye.  (R. 241-42).

On January 16, 2006, Plaintiff was seen for a follow up at the ophthalmology department with Jerilynn Spring, APRN-BC; he was positive for decreased vision and BPH.  (R. 297).  Plaintiff's resting blood sugar was running less than 150 and he was doing much better on Glucovance.  (R. 297).  His HGB A1C was high at 7.8 and his whole blood glucose was high at 175.  (R. 298).  Plaintiff's treating physician Dr. Jarad gave an opinion on Plaintiff's disability that was largely illegible.  (R. 198-99).  Dr. Jarad stated that by January 2006,  Plaintiff's diabetes were controlled with oral medications and that he suffered from retinopathy.  (R. 199).  On February 1, 2006, Plaintiff's visual acuity was 20/40 in the right eye and 20/80 in the left eye.  (R. 279).  On April 7, 2006, Plaintiff's visual acuity was 20/40 in the right eye and 20/70 in the left eye.  (R. 281).

On April 20, 2006, Plaintiff began treatment at the VA hospital.  (R. 211-13).  Nurse Pettway noted that he had episodes of shortness of breath, high cholesterol and difficulty urinating.  (R. 211).  Plaintiff was hard of hearing in both ears, and a referral to audiology was

made.  (R. 206-07).  On May 19, 2006, Plaintiff reported that his vision was foggy, and his visual acuity was 50 in the right eye and 80 in the left eye.  (R. 283).  Plaintiff was seen as a follow up with Ms. Spring on July 18, 2006 when he had lost 30 pounds, however his glucose continued to run high at 184.  (R. 295-96).  On October 23, 2006, Plaintiff had vision changes with fluctuations in his blood sugar.   (R. 284-85).  On November 2, 2006, Plaintiff complained of episodic pain in his feet, not associated with walking.  (R. 202).  On examination, touch sensations were slightly impaired in both feet.  (R. 202).  Plaintiff was noted to have borderline high diabetic blood pressure and mild to severe sensorineural hearing loss in both ears.  (R. 202).

On November 13, 2006, Sayoko E. Moroi, M.D., Ph.D. filled out a form noting that he has treated Plaintiff since March of 2000, and has treated him 25 times since February of 2004.  (R. 218-19).  Dr. Moroi noted that Plaintiff's diagnoses include traumatic glaucoma, a corneal scar in the left eye, and amblyopia in the right eye.  (R. 218).  Dr. Moroi opined that Plaintiff's vision problems would significantly limit his ability to read, perform tasks requiring visual discrimination, duties requiring depth perception, avoiding hazards and being a danger to himself or others.  (R. 219).  Dr. Moroi opined that Plaintiff has decreased central field attributed to amblyopia in the right eye.  (R. 220).

On November 15, 2006, Plaintiff complained of generalized fatigue and mild shortness of breath.  (R. 293).  Plaintiff's HGB A1C was slightly elevated, and planned to get a B12 shot due to his fatigue.  (R. 293).  On December 6, 2006, Plaintiff stated that the B12 injection from the last visit seemed to help quite a bit, although he had diarrhea as a side-effect.  (R. 292).

Treating physician Dr. Jarad filled out a Physical Capacities Evaluation on December 8,

2006.  (R. 301-03).   Dr. Jarad opined that Plaintiff could sit for 4 hours in an 8 hour work day, sit for less than 1 hours in an 8 hour work day, that he is limited due to fatigue, that he could frequently lift up to 5 pounds, occasionally lift between 6 and 20 pounds, and never lift more than 20 pounds.  (R. 301).  Plaintiff can use his hands on a regular and sustained business, but he requires complete freedom to rest frequently without restriction.  (R. 302).

### Vocational Evidence

ALJ Revels asked a hypothetical question involving an individual of Plaintiff's age, education level, and work experience who needs work that does not require: operating at dangerous, hazardous heights, or around dangerous machinery; good depth perception or peripheral vision; fine visual acuity; and that involves simple, repetitive, or unskilled work due to moderate limitations in the ability to maintain concentration for extended periods due to fatigue. (R. 327-28).  VE Szydlowski responded that the individual could perform work as a bench assembly (6,000 jobs), janitor/cleaner (5,000 jobs), hand packers and packagers (5,000 jobs) and various kitchen workers and food preparers (10,000 jobs).  If the hypothetical individual is only able to do tasks involving visual discrimination for five minutes at a time, then would have to rest and not use his eyes for another five to ten minutes, the individual would not be able to perform any jobs because they would be off task for a large amount of time.  (R. 330). If the individual had to use the bathroom unscheduled once an hour for five to ten minutes, the individual would only be able to work at jobs such as a janitor where he was working on his own.  (R. 331).  If the individual had to use the bathroom twice an hour for five to ten minutes, that generally would be a problem and would require an accommodation.  If the individual had to lie down two to three hours during an eight hour day, all jobs would be eliminated (R. 332).

4.      *ALJ Revels's Decision*

ALJ Revels found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008, and that he had not engaged in substantial gainful activity since her alleged onset date of May 15, 2004 (R. 21).  She found that Plaintiff's status glaucoma and diabetes mellitus were "severe" impairments within the meaning of the Regulations, but not "severe" enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, or Regulations No. 4 (R. 21-22).   ALJ Revels found that Plaintiff could not perform his past relevant work but that he retained the RFC to perform medium work that did not require being at hazardous heights; operating dangerous machinery; allowed for limited depth perception and peripheral vision; did not require fine visual acuity; and was simple, repetitive and unskilled because of moderate limitations in maintaining  concentration for extended periods due to fatigue (R. 22).  Considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform referring to the jobs identified by VE Szydlowski (R. 25).

ALJ Revels found that Plaintiff's allegations regarding his functional limitations were not totally credible (R. 23).  She found that Plaintiff did not complain to Dr. Jarad, his treating physician, about blurred vision (R. 23). Further that Plaintiff's diabetes was controlled on April 26, 2006, and December 6, 2006, and he had did not have central visual acuity of 20/200 or less (R. 23-24).

II.      **Analysis**

10

A.      **Standards of Review**

Plaintiff must establish that he became disabled under Title II of the Act prior to the her insured status expires.  *See* 42 U.S.C. § 416(I); 20 C.F.R. §§ 404.131(a), 404.320(b)(2)*; Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment(s) must be of such severity that the individual can neither do his previous work nor engage in any other kind of substantial gainful work which exists in the national economy, considering his age, education, and work experience.  *See id.* § 423(d)(2)(A).

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).   The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts.  *Id*.  If the Commissioner's decision is supported by substantial evidence, a reviewing

11

court must affirm. *Studaway v. Secretary of HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987); *Kirk v. Secretary of HHS*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  In determining the existence of substantial evidence, it is not the function of a federal court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry the burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than his past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects.  A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.  *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

### B.    Factual Analysis

In his motion for summary judgment, Plaintiff argued that (1) ALJ Revels failed to assess

Plaintiff's credibility properly; (2) ALJ Revels failed to give proper weight to the opinions and assessments made by the Plaintiff's treating physician; and (3) The ALJ failed to pose complete and accurate hypothetical questions to the vocational expert (Dkt. # 9).

ALJ Revels found that Plaintiff's glaucoma and diabetes mellitus were "severe" impairments but that he did not have an impairment or combination of impairments that met or equaled the level of severity required by the Listing of Impairments in Appendix 1 of Subpart P, Regulations No. 4" (R. 21-22).

### 1. *Plaintiff's Credibility*

Plaintiff challenges the Commissioner's decision arguing that the ALJ's credibility finding is not supported by the record because it fails to adequately address the objective medical evidence supporting a finding of blurred vision. Subjective evidence is only considered to "the extent [it] can reasonably be accepted as consistent with the objective medical evidence and other evidence" (20 C.F.R. 404.1529(a)) (*See Young v. Secretary of Health & Human Servs.,* 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan v. Secretary,* 801 F.2d 847, 852 (6th Cir. 1986) (Subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record that would explain such pain). The issue of a claimant's credibility regarding subjective complaints is largely within the scope of the ALJ's fact finding discretion – the Commissioner's "zone of choice" – if adequately explained and supported by the record.

The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The ALJ must, however, do more than say

the testimony is not credible based on generalities or merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain. *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994). In order for an ALJ to properly discredit a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons. S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings, but rather they must be specific.

An ALJ does not have to discuss in great detail the basis for every finding made, but and ALJ "must adequately articulate the rationale for his conclusions in order to facilitate meaningful judicial review." *Williams v. Barnhart*, No. 05-CV-79107-DT, 2005 U.S. Dist. LEXIS 42030, at *7 (E.D. Mich., Oct. 24, 2005) (accepted by *Williams v. Barnhart*, 407 F. Supp. 2d 862 (E.D. Mich. 2005)). Yet, "there is no heightened articulation standard where the ALJ's findings are supported by substantial evidence." *Bledsoe v. Barnhart*, No. 04-4531, 2006 U.S. App. LEXIS 2692, at *8 (6th Cir., Jan. 31, 2006) (citing *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986)). Thus, the critical question here is whether there is substantial evidence supporting ALJ Revels credibility finding.

In rejecting Plaintiff's credibility regarding blurred vision, ALJ Revels measured Plaintiff's testimony against the medical evidence that Dr. Jarad, Plaintiff's treating physician, had made no notations of complaints about blurred vision (R. 23). Yet Dr. Jarad treated Plaintiff for diabetes mellitus, hypertension, hyper-lipidemia, shortness of breath, and benign prostatic hyperplasia. He specifically noted that he would defer to Dr. Moroi, the claimant's

14

ophthalmologist, as to Plaintiff's visual limitations (R. 198-199).  And Dr. Moroi opined that

Plaintiff's vision problems would significantly limit his ability to read, perform tasks requiring

visual discrimination, duties requiring depth perception, avoiding hazards and being a danger to

himself or others.  (R. 219).  Dr. Moroi opined that Plaintiff has decreased central field attributed

to amblyopia in the right eye.  (R. 220).

Further, an ophthalmologist from the University of Michigan glaucoma clinic opined that

Plaintiff's blurred vision when reading was likely related to changes in his blood sugar.  (R. 149-

50). Indeed, Plaintiff testified at the hearing that the ALJ seated ten feet from him appeared

blurry (R. 317).  Yet, as noted in the following section, ALJ Revels disregarded Dr. Jarad's

reports on unstable and elevated blood sugar during significant portions of the asserted disability

period.  If the complete record was fairly read, Plaintiff's blurred visual problems might have

been credited, at least for substantial periods of the disability period prior to 2006 when his

blood sugar came under better control.

The ALJ ignored Plaintiff's reported need for frequent bathroom breaks in her credibility

analysis even though Plaintiff's testimony concerning this was uncontroverted.  Plaintiff testified

he has side effects from his medication including frequency of urination and bowel movements.

(R. 312-13).  Plaintiff estimated that he must use the bathroom twice an hour, or three times an

hour if his blood pressure is high, which happens regularly.  Plaintiff is constipated occasionally

and gets diarrhea.  (R. 313).  Plaintiff has accidental bowel movements 4 to 5 times a month, and

stated that he has about two minutes warning before he has to use the bathroom.  (R. 313, 332).

Even during his testimony he stated that he needed a break to use the bathroom (R. 325).   Nurse

Spring noted that diarrhea was a side effect of his diabetes medication (R. 292).  Plaintiff's

15

frequent need to use the bathroom and existence of accidents occurring 4-5 times per month are supported by Plaintiff's testimony and the medical evidence with no evidence to the contrary. Because ALJ Revels did not provide a suitable reason for rejecting Plaintiff's credibility on this issue his need to use the toilet frequently, that should be considered as affecting his residual functional. As noted below in discussing the hypothetical question, VE Szydlowski noted that five minutes per hour might be tolerated in certain janitorial jobs, but not 10 minutesR. 331).

### 2. *Treating Physician*

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. The case law in this circuit has stated that if adequately supported by objective findings, and if uncontradicted by other substantial medical evidence of record, a treating physician's opinion of disability is binding on the Social Security Administration as a matter of law. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same); *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir. 1982); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). The administrative decision could reject a properly supported treating physician's opinion of disability if the record contains "substantial evidence to the contrary." *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 927 (6th Cir. 1987).

Under the Social Security Administration regulations, the Commissioner will generally give more weight to the opinions of treating sources, but it sets preconditions for doing so. 20 C.F.R. §404.1527. The Commissioner will only be bound by a treating source opinion when it is

16

"well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." 20 C.F.R. § 404.1527(d); *See also*, S.S.R. 96-2p.

Yet the conclusion of whether a claimant is "disabled" is a decision reserved to the Commissioner to decide.  20 C.F.R. §§ 404.1527(e)(1), (2), 416.927(e)(1), (2).  And, "[w]e will not give any special significance to the source of an opinion on an issue reserved to the Commissioner." *Id*. at §§ 404.1527(e)(3), 416.927(e)(3).

Plaintiff has been treated by Dr.  Jarad since at least November 5, 1999. (R. 116-40) This lengthy treatment relation adds to the strength of his opinion as a treating source in substantial part based on an ongoing course of treatment and contact with the patient. Furthermore, Dr. Moroi treated Plaintiff's eye problems since 2000.

As to Plaintiff's diabetic condition, ALJ Revels's determination gave little to no weight to Dr. Jarad's opinion.  While there were two instances during the period of disability in April and December 2006 in which Plaintiff's diabetes were controlled on medication which ALJ Revels notes (R. 23).  Yet, just prior and during the disability period his diabetes was often found to be non-controlled as evidenced by blood sugar test results which were high (April 16, 2004, "non controlled DM" "above 200", R. 123; May 5, 2004, "not under control", R. 122,  March 7, 2005, "occasionally as high as 200" R. 120, July 5, 2005, "Non-controlled DM", R. 118).  ALJ Revels, without adequate explanation, disregards this substantial evidence of Plaintiff having difficulty controlling his diabetes for more than a 12-month period from his claimed onset date of May 15, 2004.  There are no other physicians or treatment records demonstrating that his diabetes was controlled with medication during this time period. Thus discounting his elevated

17

blood levels and their consequences such as blurred vision during this period is without

substantial evidence, and a period of disability might have been in order.[3]

Dr. Jarad stated his opinion that Plaintiff could sit up to 4 hours in an 8 hour workday, he

noted he could sand or walk less than one hour (R. 301.) Moreover, Dr. Jarad also stated that he

would be interested in providing additional information about Plaintiff, yet the ALJ failed to

recontact Dr. Jarad regarding such information (R. 200).  Under the regulations, she should have

recontacted  Dr. Jarad. SSR 96-5p; 20 C.F.R. §404.1512(e).[4]

_____

[3] ALJ Revels' decision states that Dr. Jarad's progress notes from November 5, 1999 through September 12, 2005, make no mention of complaints of fatigue, but she fails to note Dr. Jarad did mention fatigue in his progress notes of November 5 and December 6, 2006 R. 292 & 293).

[4] 20 C.F.R. §404.1512(e) provides:

(e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

 SSR 96-5p states:
> The regulations provide that the final responsibility for deciding issues such as these is reserved to the Commissioner.

> Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.

**3.** *Flawed Hypothetical Question and resultant RFC determination*

ALJ Revels found Plaintiff's glaucoma to be a severe impairment. As a result, Plaintiff's counsel argues ALJ Revels was required to include in her RFC determination and hypothetical question to the VE the limitations pertaining to glaucoma in order to determine whether the jobs cited required either frequent or occasional near acuity and depth perception. The hypothetical question posed to the VE included the limitation that the hypothetical individual's work would not require good depth perception or peripheral vision, and no fine visual acuity. Plaintiff's counsel argues that the terms "limited" and "not good" are not defined by the DOT, leaving the VE at a loss to quantify how Plaintiff's vision limitations would affect his ability to perform work. Yet, Plaintiff's counsel at the hearing did not seek greater clarification from the ALJ nor ask any cross-examination questions on this issue of visual limitation. (R. 22, 327). It seems ALJ Revels' hypothetical question adequately dealt with depth perception, peripheral vision and no fine visual acuity. Again, without providing adequate reasons for discounting Plaintiff's blurred vision during the substantial periods in 2004 and 2005 – which apparently occurred at distances and would not be encompassed in excluding fine visual acuity – the issue of blurred vision should have been included in the hypothetical.

Plaintiff's counsel also objects to the jobs identified by the VE – particularly the janitor jobs – were not accompanied with the corresponding occupational codes from the D.O.T. making Plaintiff's task of arguing the validity of VE's testimony a game of guess work. Yet, the ALJ did confirm with the VE that the jobs classifications were consistent with the requirements in the DOT (R. 330). Again, Plaintiff's counsel at the hearing did not request the

job classifications from VE Szydlowski which would have been the appropriate time to raise this issue.

ALJ Revels found that Plaintiff could not perform his past work in which he was self-employed doing home repair and remodeling, but could perform work in the national economy in which he would not be self-employed.  Plaintiff's complaints of increased urination and polyuria existed prior to the onset date but then they could be accommodated in his self employment at home.  Only certain of the janitorial jobs identified could accommodate a five minute per hour toilet break, but not a ten minute break or two five minute breaks per hour (R. 331). Plaintiff's need for frequent toilet use increased after his onset date because of the additional problem of chronic diarrhea as a side effect of his diabetes medication (R. 292).  Side effects of medication supported by the medical record must be included into the RFC.  SSR 96-8p.[5] ALJ Revels' findings did not account for these limitations. Plaintiff's side effects are supported by medical evidence with no medical evidence to the contrary and should have been accounted for in the ALJ's RFC finding.

As noted above, there have been a number of errors in the present administrative consideration. Yet, unless this Court finds the proof of disability to be overwhelming, or the proof of disability is strong and there is a lack of evidence to the contrary, the correct remedy would not be to award judicial benefits, but rather remand for further proceedings.  *See Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). It cannot be said that the current case is one where "proof of disability is overwhelming, or proof of disability is strong

---

[5] SSR 96-8p  ([t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication).

and evidence to the contrary is lacking." In this case all essential factual issues have not been resolved with regard to a number of issues, including: possible additional documentation from Dr. Jarad explaining Plaintiff's RFC limitation to one hour of standing or walking; further findings on Plaintiff's credibility regarding the number and length of his toilet needs; further examination of the VE with a more complete hypothetical questions.  Accordingly, a remand for further administrative proceedings consistent with this Report and Recommendation is necessary.

**IV.     Recommendation**

For the reasons stated above, it is Recommended that Defendant's Motion for Summary Judgment be **DENIED** and that Plaintiff's Motion for Summary Judgment be **GRANTED** and the matter remanded for further administrative proceedings.  The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 31, 2009                              s/Steven D. Pepe
Ann Arbor, Michigan                             United States Magistrate Judge


I certify that a copy of the foregoing document was sent to all parties and counsel of record via electronic and/or U.S. Mail on July 31, 2009.

                                                  s/Diane Opalewski
                                                  Case Manager