UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK J. McNELIS,   Case No. 08-12529

            Plaintiff,   DISTRICT JUDGE
               ARTHUR J. TARNOW
v.

COMMISSIONER OF SOCIAL   MAGISTRATE JUDGE
SECURITY,   STEVEN D. PEPE

            Defendant.
_____/

## ORDER

**ADOPTING IN PART AND REJECTING IN PART
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [23],**

**GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [21];**

**GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [22];**

**and**

**REMANDING CERTAIN ISSUES TO THE ALJ
FOR FURTHER ANALYSIS AND EXPLANATION**

      On June 13, 2008, Patrick McNelis ("Plaintiff") filed suit seeking judicial review of a final decision by which the Commissioner of Social Security ("Defendant") disallowed Plaintiff's claim for Disability Insurance Benefits under Title II of the Social Security Act. Plaintiff alleged disability due to glaucoma and diabetes mellitus, with an onset date of May 15, 2004.

      Pursuant to Local Rule 72.1(b)(3), "all cases seeking review of a denial of social security benefits [are] assigned both to a district judge and a magistrate judge." On July 31, 2009, the Magistrate issued a Report and Recommendation ("R&R") [23] recommending that the Court deny

1

Defendant's Motion for Summary Judgment [21], grant Plaintiff's Motion for Summary Judgment [22],[1] and remand the matter for further administrative proceedings. On August 14, 2009, Defendant timely filed Objections [24] to the Report and Recommendation. Plaintiff filed a response [25] to Defendant's Objections.

Those filings are now before the Court.

## I. STANDARD OF REVIEW

Judicial review of facts found by the Administrative Law Judge ("ALJ") is limited to an evaluation of whether those findings are supported by substantial evidence and whether the proper legal standards were applied. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Court must examine the administrative record as a whole. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). However, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court must affirm an ALJ's decision if the findings and inferences reasonably drawn from the record are supported by substantial evidence, even if the record could support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

Under 28 U.S.C. § 636(b)(1), a magistrate judge's orders shall not be disturbed unless "found to be clearly erroneous or contrary to law." *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). The "clearly erroneous" standard requires the Court to affirm the Magistrate's decision unless, after reviewing the entirety of the evidence, it "is left with the definite and firm conviction that a mistake has been committed." *Sandles v. U.S. Marshal's Service*, 2007 WL 4374077, 1 (E.D. Mich. 2007) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). The test is:

> not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw. Rather the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one.

---

[1] Plaintiff's filing [22] was entitled "Plaintiff's Reply to Defendant's Memorandum in Support of Motion for Summary Judgment." Noting that the relief Plaintiff sought was a remand for further proceedings, the Magistrate construed the filing as a cross-motion for summary judgment.

*Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir.1985).

This Court reviews *de novo* any objections to a Magistrate's Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Here, Defendant has filed Objections, and the assignments of error are considered below.

## II. DEFENDANT'S OBJECTIONS

### I. *Plaintiff's Credibility Regarding Blurred Vision*

First, Defendant "objects to the Magistrate's conclusion that the ALJ improperly rejected Plaintiff's credibility regarding blurred vision." Def.'s Obj. [24] at 1-3.

In the Report and Recommendation [23], the Magistrate determined that "[i]n rejecting Plaintiff's credibility regarding blurred vision, [the ALJ had] measured Plaintiff's testimony against the medical evidence that Dr. Jarad, Plaintiff's treating physician, had made no notations of complaints about blurred vision." R&R at 14 (citing Tr. [12] at 23). The Magistrate noted, however, that Dr. Jarad's report specifically referred to the November 13, 2006, records of Dr. Moroi, an opthalmologist, as to Plaintiff's visual limitations. *See id.* at 14-15; Tr. at 215. Dr. Moroi had indicated that Plaintiff's visual problems would "significantly limit" Plaintiff's participation in a number of activities. R&R at 15 (citing Tr. at 219). Furthermore, the Magistrate noted that an April 19, 2004, exam conducted at the University of Michigan Glaucoma Clinic included notes suggesting that "Plaintiff's blurred vision when reading was likely related to changes in his blood sugar." *Id.* (citing Tr. at 149-50).[2] Finally, the Magistrate noted that "Plaintiff testified at the hearing that the ALJ seated ten feet from him appeared blurry." *Id.* (citing Tr. at 317). Ultimately, the Magistrate concluded that "[i]f the complete record was fairly read, Plaintiff's blurred visual problems might have been credited, at least for substantial periods of the disability period prior to 2006 when his blood sugar came under better control."

In Defendant's Objections [24], Defendant first argues that Dr. Moroi's report was "internally inconsistent" because, although Plaintiff was found to be "significantly limited" in

---

[2] Specifically, the clinic intake notes show: "[patient complains of] eyes 'blurry' when tries to read, esp. in p.m." Treatment notes add: "difficulty with reading only <u>after</u> <u>dinner</u> . . . likely [blood sugar]" change. *See* Tr. at 149-50 (emphasis in original).

3

performing a number of tasks, Plaintiff was also found to have no restrictions or impairments on other measures. *See* Def.'s Obj. at 1-2 (citing Tr. at 219-21). Defendant also notes that in September, 2005, Plaintiff underwent surgery for the glaucoma in his left eye, and that postoperative examinations yielded positive and optimistic treatment notes. *See id.* at 2 (citing Tr. at 240, 242, 244, 253-55, 288-89). Furthermore, Defendant argues that the exam conducted at the University of Michigan Glaucoma Clinic did not include a definitive diagnosis regarding Plaintiff's complaints of blurry vision, and also that the exam was conducted in 2004, when Plaintiff was still working, approximately 13 months before Plaintiff's alleged disability onset date. *See id.* Defendant cites Sixth Circuit case law for the proposition that "the ability to work with an impairment indicates that impairment is not disabling." *Id.* (citing *Auer v. Sec'y of Health and Human Servs.*, 830 F.2d 594, 595-96 (6th Cir. 1987) ("we find that [the plaintiff]'s blindness in one eye has little effect on the disability determination given his past work history" accomplished while blind). Ultimately, Defendant argues that, in assessing Plaintiff's residual functional capacity ("RFC"), the ALJ made reasonable determinations as to Plaintiff's vision impairments, and that "[t]he ALJ never took blurred vision into consideration because there was no evidence to support such a limitation." *Id.* at 3.

In Response [25], Plaintiff answers Defendant's objections, arguing first that Dr. Moroi's report should not be found "internally inconsistent" simply because the opthalmologist diagnosed Plaintiff with some limitations, but not others. *See* Pl.'s Resp. at 2. Similarly, Plaintiff argues that while Defendant cites the positive treatment notes that followed Plaintiff's left eye glaucoma surgery of 2005, Defendant ignores the abnormal findings resulting from the same follow-up examinations. *See* Pl.'s Resp. at 2 (citing Def.'s Objections at 2; Tr. at 239, 241). In response to Defendant's case law, Plaintiff cites Seventh Circuit case law holding that "having a job is not necessarily inconsistent with disability." *See id.* at 3 (citations omitted). Plaintiff concludes that, contrary to the opinions of Defendant and the ALJ, "blurred vision was consistently reported to Plaintiff's treating physicians, and was supported by the medical record." *Id.* (citing "Pl.'s Mem. at 13-14"[3]; R&R at 14-15).

---

[3] The Court cannot locate this citation, because it is unclear to which document Plaintiff refers.

The Court reviews *de novo* Defendant's assignment of error regarding blurred vision. *See* 28 U.S.C. § 636(b)(1). Review of the ALJ's factual findings is limited to an evaluation of whether those findings are supported by substantial evidence and whether the proper legal standards were applied. *Key*, 109 F.3d at 273. The Court cannot review the evidence *de novo*, make credibility determinations, or weigh the evidence, and must affirm the ALJ's decision if the findings and inferences reasonably drawn from the record are supported by substantial evidence, even if the record could support a different conclusion. *See Buxton*, 246 F.3d at 772; *Brainard*, 889 F.2d at 681.

A review of the administrative record shows that the ALJ examined Dr. Jarad's treatment notes produced between November 5, 1999, and September 12, 2005 – a time period encompassing Plaintiff's alleged onset date of May 15, 2004 – and found that Plaintiff had not complained of blurred vision to his treating physician. *See* Tr. at 23 ("[t]hese progress notes show no complaints of blurred vision"). This Court's direct review of those treatment notes shows that, indeed, upon each visit to the physician, Plaintiff was affirmatively documented to have "no blurred vision." *See* Tr. at 115-140. This review undermines Plaintiff's argument that "blurred vision was consistently reported to Plaintiff's treating physicians," a proposition for which Plaintiff cites as authority only the Report and Recommendation and his own memorandum, which the Court cannot locate in the administrative record. *See* Pl.'s Resp. at 3. Plaintiff offers no citations directly to the record.

To the extent that Dr. Jarad's evaluation of Plaintiff's vision limitations deferred to Dr. Moroi's expertise, the Court agrees with Plaintiff's observation that the opthalmologist's report from November, 2006, is not "internally inconsistent" simply because Plaintiff was found to suffer from some specified vision limitations, but not others. *See* Pl.'s Resp. at 2. Nevertheless, the report includes no notations regarding "blurred vision," and Dr. Moroi added no such analysis to his more particularized evaluation of Plaintiff's limitations. *See* Tr. at 215-21.

The Report and Recommendation identifies one record reference to blurred vision: the intake notes from Plaintiff's April, 2004, exam at the University of Michigan Glaucoma Clinic. *See* R&R at 14. At that exam, Plaintiff appears to have complained that his eyes were "blurry" when he tried to read at evening time. *See* Tr. at 149-150. Treatment notes from that exam add that Plaintiff alleged difficulty in reading "only <u>after</u> <u>dinner</u>," and that the difficulty was likely because of a change in blood sugar levels, presumably immediately following the evening meal. *See* Tr. at 149-

5

50 (emphasis in original). As Defendant observes, this clinical examination predated Plaintiff's alleged disability onset date by thirteen months, and it also predated Plaintiff's glaucoma surgery, after which various of Plaintiff's other symptoms showed improvement. *See* Def.'s Obj. at 2. Plaintiff continued to work during that thirteen-month period, weighing towards a finding that any blurry vision impairment was not ultimately disabling. *Id.* (citing *Auer*, 830 F.2d at 595-96).[4]

The ALJ's analysis included consideration of an additional occasion when Plaintiff reported blurred vision on August 18, 2005, after his alleged onset date. *See* Tr. at 23. However, the ALJ noted that, at that time of that examination, Plaintiff's physician noted that Plaintiff was "noncompliant," and the ALJ appears to have discounted Plaintiff's complaint for that reason. *See id.*; *see also* Tr. at 144-188.

In her ultimate analysis of Plaintiff's vision impairments, the ALJ concluded that "[Plaintiff]'s medically determinable impairments could reasonably be expected to produce the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible." Tr. at 24.

This Court may not make credibility determinations or weigh the evidence anew, and here the ALJ's specific credibility findings should not be disturbed. *See Brainard*, 889 F.2d at 681. Like the ALJ herself, the Court observes that the evidence on the record *could* support a finding that Plaintiff's alleged a disabling impairment in the form of blurry vision. However, the Court finds that the ALJ's finding to the contrary was "supported by substantial evidence," and that her inferences were "reasonably drawn from the record." *See Buxton*, 246 F.3d at 772.

Therefore, under the controlling standard of review, the Court **GRANTS** Defendant's Objection on the issue of blurry vision, **REJECTS** the Report and Recommendation on that point, and **DECLINES** to remand the case for reconsideration of that issue.

---

[4] Otherwise persuasive Seventh Circuit opinions would not be binding upon the Court's decision in this matter. Nevertheless, the Court has reviewed the first case cited in Plaintiff's Response, and finds it inapplicable to the present facts and, thus, unpersuasive. *See* Pl.'s Resp. at 3; *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004). The second case Plaintiff references cannot be located at the citation provided.

## II. *Frequency of Bathroom Breaks*

Next, Defendant objects that, "[c]ontrary to [the] Magistrate['s] finding, there is no objective medical evidence to establish that Plaintiff had to frequently use the bathroom." Def.'s Obj. at 3.

In the Report and Recommendation [23], the Magistrate cited Plaintiff's testimony regarding certain side effects of diabetes medication, and found that "Plaintiff's testimony concerning [his need for frequent bathroom breaks] was uncontroverted." R&R at 15. The Magistrate faulted the ALJ for failing to "provide a suitable reason for rejecting Plaintiff's credibility [regarding Plaintiff's] need to use the toilet frequently," and concluded that the side effects should have been factored into the ALJ's determination of Plaintiff's RFC. *Id.* at 16.

In Defendant's Objections [24], Defendant argues that the Magistrate's analysis relied solely on "Plaintiff's subjective statements at the hearing." Def.'s Obj. at 3. Defendant acknowledges a nurse's report from December, 2006, noting that Plaintiff had then complained of "slight increased diarrhea symptoms," but argues that the nurse suggested only that the symptoms were "most likely" a side effect of Plaintiff's medication. *Id.* (citing Tr. at 292). Defendant concludes that no objective medical evidence supported Plaintiff's testimony about his need for frequent bathroom breaks. *Id.*

In his Response [25], Plaintiff argues that the nurse's notation, discussed above, constitutes objective evidence beyond Plaintiff's own "subjective statements." Pl.'s Resp. at 4. Plaintiff joins the Magistrate in suggesting that the ALJ improperly failed to consider the side effects of medication in determining Plaintiff's RFC. *Id.* (citing SSR 96-8p).

The Court reviews *de novo* Defendant's assignment of error regarding Plaintiff's need for frequent bathroom breaks. *See* 28 U.S.C. § 636(b)(1).

A review of the administrative record suggests that the ALJ considered Plaintiff's reports of "increased urination and bowel movements as a result of medications." *See* Tr. at 23. The ALJ's opinion cites progress notes for the 2006 calendar year indicating that Plaintiff suffered from "diarrhea that is tolerable."[5] *Id.* Specifically, the relevant treatment note from a December, 2006, evaluation states that Plaintiff reported that his blood sugar was well-controlled due to medication,

---

[5] The Court declines to equate Plaintiff's report that his diarrhea was "tolerable" with the more specific finding that would be necessary to determine whether that side effect could be accommodated within a work day at one of the jobs correlated with Plaintiff's RFC.

7

that he suffered from "slight increased diarrhea symptoms," and that he "state[d] he [was] able to tolerate the side effect of diarrhea for now." Tr. at 292.[6]

As the Magistrate noted, Plaintiff testified at his hearing that he suffered side effects from medication including the necessity for frequent urination and bowel movements, having little warning before he has to use the bathroom, and accidentally soiling himself approximately four or five times per month. *See* R&R at 15; Tr. at 312-13, 325. Also at the hearing, Plaintiff's attorney questioned the vocational expert about how the side effects Plaintiff alleged would impact a worker's job performance, ultimately eliciting an opinion that if a worker were to need two 10-to-15-minute bathroom breaks per hour, it "would present difficulties in a work situation, where that would fall into the category of needing accommodation." Tr. at 331.

An ALJ need not accept a claimant's own allegations of disability when such testimony is not supported by the record. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). However, the ALJ seeking to discredit a claimant's subjective testimony must offer a credibility determination accompanied by specific reasons for dismissing the claims; it is insufficient to conclude summarily that the overall evidence does not contain the requisite clinical, diagnostic, or laboratory findings to substantiate the claimant's testimony. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994).

Here, the ALJ recognized Plaintiff's complaints of increased urination and bowel movements, and noted that Plaintiff had reported "tolerable" diarhhea as a side effect of his medication. *See* Tr. at 23. However, the ALJ's opinion offers no specific discussion of Plaintiff's complaints regarding this issue, and no analysis that would either credit or discredit the allegations Plaintiff made during his subjective testimony. Although the ALJ relies directly on the vocational expert's testimony elsewhere in her opinion, the ALJ makes no reference to the expert's conclusion about the impact of frequent bathroom breaks on a claimant's employability. It appears that the ALJ may have intended to resolve the bathroom break issue in the passage of the opinion concluding that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not fully credible." *See* Tr. at 24. However, unlike the allegations of blurry vision, Plaintiff's

---

[6] The same report attests that Plaintiff "denie[d] urinary frequency, urgency," or other discomfort. Tr. at 292.

bathroom break allegations are afforded only superficial acknowledgment in the ALJ's opinion, and the ALJ offers no analysis of Plaintiff's credibility as it pertains specifically to the latter claims.

Plaintiff raises the argument that the effects of treatment, including side effects from medications, must be considered in an ALJ's determination of a claimant's RFC. *See* Pl.'s Resp. at 4; SSR 96-8p. The record may or may not support a finding of disability based on Plaintiff's bathroom break allegations, but the analysis presented in the ALJ's opinion is insufficient for the reviewing Court to make that determination.

Therefore, under the controlling standard of review, the Court **DENIES** Defendant's Objection on the issue of Plaintiff's need for frequent bathroom breaks, **ACCEPTS** the Report and Recommendation on that point, and **REMANDS** the case to the ALJ for further analysis of that issue.

### III. *Failure to Give Weight to the Treating Physician's Opinion*

Next, Defendant objects that the Magistrate unduly criticized "the ALJ's failure to give weight to Dr. Jarad's opinion about diabetes mellitus." Def.'s Obj. at 3.

In the Report and Recommendation [23], the Magistrate referred to a period of time "just prior and during the disability period [when Plaintiff's] diabetes was often found to be non-controlled as evidenced by [high] blood sugar test results." R&R at 17 (citing Tr. at 118, 120, 122, 123). Faulting the ALJ for "disregard[ing] this substantial evidence of Plaintiff having difficulty controlling his diabetes for more than a 12-month period from his claimed onset date," the Magistrate concluded that "a period of disability might have been in order." *Id.* at 17-18.

In Defendant's Objections [24], Defendant proposes that the Magistrate placed mistaken reliance on blood sugar evidence predating Plaintiff's onset date, because "if Plaintiff had that impairment while he was working, then the ability to work with an impairment indicates that impairment is not disabling." *See* Def.'s Obj. at 3 (citing *Auer*, 830 F.2d at 595-96). Defendant also cites various record evidence showing that Plaintiff's blood sugar levels were most often normal or "only slightly elevated" during and preceding his period of disability, and that Plaintiff reported "well-controlled" diabetes to Dr. Jarad. *Id.* at 4. Defendant concludes that "the ALJ reasonably rejected Dr. Jarad's opinion." *Id.*

9

In his Response [25], Plaintiff defends the Magistrate's citation of evidence from "only a few weeks prior to the onset date in order to show a consistent pattern of uncontrolled diabetes which lasted for more than 12 months." Pl.'s Resp. at 4. Plaintiff further argues that the fact that he worked while suffering from elevated blood sugar shows not that he was able to work while disabled, in general, but rather that "he was attempting to work as a self-employed individual who was able to make his own schedule while disabled but was unable to continue," and that he "alleged disability shortly after his diabetes became uncontrolled." *Id.* at 4-5.

The Court reviews *de novo* Defendant's assignment of error regarding the weight to be accorded to the treating physician's opinion regarding Plaintiff's physical capabilities. *See* 28 U.S.C. § 636(b)(1). Review of the ALJ's factual findings is limited to an evaluation of whether those findings are supported by substantial evidence and whether the proper legal standards were applied. *Key*, 109 F.3d at 273.

Both Defendant's Objections [24] and Plaintiff's Response [25] address the question of how much weight is to be accorded to the opinion of Plaintiff's treating physician, Dr. Jarad. The parties focus their discussion on the issue of whether Dr. Jarad found Plaintiff's diabetes to be "controlled" or "uncontrolled" during the twelve-month period preceding Plaintiff's alleged onset date. However, the ALJ's opinion suggests that the ALJ "attribute[d] only minimal weight to [Dr. Jarad's] conclusions" on a particular sub-issue, unrelated to whether Plaintiff's diabetes was controlled prior to the claimed onset date.

The ALJ acknowledges that Dr. Jarad reported that Plaintiff "can perform only a limited range of light work activity." Tr. at 24. Specifically, on December 8, 2006, Dr. Jarad filled out a "Physical Capabilities Evaluation" ("PCE") in conjunction with Plaintiff's disability claim, and it is to that particular document that the ALJ provides a citation. *See id.*; Tr. at 301-03. In the PCE, Dr. Jarad primarily evaluated Plaintiff's level of fatigue, and opined as to how that fatigue would impact Plaintiff's ability to work an eight-hour day. *See id.* The ALJ found Dr. Jarad's opinion to be "not consistent with his treatment notes or the medical record as a whole," and thus the ALJ "attribute[d] only minimal weight to [the doctor's] conclusions." In doing so, the ALJ cited Sixth Circuit authority for the propositions that an ALJ "is not bound by a treating physician's opinion where there is substantial medical evidence to the contrary," and that an ultimate finding of

10

disability is "within the special purview of [the ALJ]." *See id.* (citations omitted).

Upon review, it appears to the Court that the arguments presented on this topic have misunderstood the fairly narrow focus of the ALJ's rejection of Dr. Jarad's opinion. It is apparent to the Court that the ALJ's decision to accord only minimal weight to Dr. Jarad's opinions was *specific* to those opinions recorded in the PCE. However, although the ALJ concludes that "[t]he medical records and the testimony of the claimant . . . demonstrate that [Plaintiff's] limitations will not interfere with his ability to function independently, appropriately, effectively and on a sustained basis,"[7] it is unclear specifically which testimonial and documentary evidence from the administrative record would controvert the opinions Dr. Jarad expressed in the PCE on the issue of Plaintiff's fatigue. *See id.*

As the Magistrate noted in the Report and Recommendation, the Social Security regulations provide guidance on the question of how an ALJ is to weigh medical opinion evidence. *See* R&R at 16. Specifically, the regulations advise claimants that:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2).

Here, the Court finds upon review that, even if Dr. Jarad's opinions expressed in the PCE were indeed "inconsistent with the other substantial evidence in [the] case record" as to the issue

---

[7] The ALJ states, somewhat superficially, that "[c]onsideration has also been given the reports of the state agency medical consultants as well as to other treating, examining, and non-examining medical sources." *See* Tr. at 24.

of Plaintiff's fatigue, the ALJ's opinion failed either to apply the enumerated factors or to "give good reasons . . . for the weight [given to the] treating source's opinion." *See id.*

Therefore, the Court **DENIES** Defendant's Objection on the issue of the proper weight to be accorded to the treating physician's opinions, **ACCEPTS** the Report and Recommendation on that point, and **REMANDS** the case to the ALJ for further analysis or explanation of the issue.

### *IV. Failure to Recontact the Treating Physician*

Next, Defendant objects that, in "criticiz[ing] the ALJ for failing to recontact Dr. Jarad" to seek additional information about Plaintiff's condition, the Magistrate has "misread the form provided to Dr. Jarad and the regulations, and has placed an unnecessary burden on the ALJ." Def.'s Obj. at 4.

In the Report and Recommendation [23], the Magistrate did suggest that because Dr. Jarad had indicated a willingness to provide additional information about Plaintiff, the ALJ should have recontacted Dr. Jarad. *See* R&R at 18 (citing C.F.R. § 404.1512(e)).

In Defendant's Objections [24], Defendant argues that, on a form provided by the Social Security Disability Program, Dr. Jarad simply "checked '[y]es'" to indicate his agreement that "'[i]f an exam or study was needed to provide additional information about this patient, he would be interested in doing it.'" Def.'s Obj. at 5 (citing Tr. at 200). Defendant notes that "[n]either the state agency nor the ALJ determined that an additional exam or study was needed." *Id.* Further, Defendant cites the language of the Social Security regulations, explaining that the statute merely authorizes the ALJ to recontact a treating physician if the record evidence is "inadequate" to support a determination regarding an applicant's disability. *See id.*; C.F.R. § 404.1512(e). Defendant argues that the record here contained no such inadequacy, and that rather, "the ALJ rejected Dr. Jarad's report specifically because [s]he found that Dr. Jarad's conclusions were not consistent with the medical records or treatment notes." Def.'s Obj. at 5; *see also* Tr. at 24. Defendant concludes that, "[c]ontrary to [the Magistrate's] finding, the ALJ was not required to recontact Dr. Jarad." Def.'s Obj. at 5.

In his Response [25], Plaintiff suggests that by citing the statutory language that authorizes an ALJ to recontact a treating physician, Defendant is "splitting hairs." Pl.'s Resp. at 5. Plaintiff argues that "Dr. Jarad's opinion was in fact consistent" with the objective medical

evidence on the record, but that if the ALJ found an inconsistency, that the ALJ "should have recontacted Dr. Jarad as the Magistrate Judge found." *Id.*

The Court reviews *de novo* Defendant's assignment of error regarding the ALJ's failure to recontact Dr. Jarad to seek additional information about Plaintiff's condition. *See* 28 U.S.C. § 636(b)(1).

The relevant passage of the Social Security regulations provides that:

> If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence . . . We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information. We will consider any additional evidence we receive together with the evidence we already have.

20 C.F.R. § 404.1527(c)(3).

Under this regulation, absent a finding of inconclusive or "insufficient evidence to decide whether [a claimant is] disabled," an ALJ is not *required* to recontact a treating physician, nor is the ALJ required to take any of the other actions listed above. *See id.* Here, the ALJ did not make a finding that the evidence was insufficient to support a conclusion regarding Plaintiff's alleged disability. Thus, the ALJ was not required to recontact Dr. Jarad.

Therefore, the Court **GRANTS** Defendant's Objection on the issue of whether the ALJ should have recontacted the treating physician, **REJECTS** the Report and Recommendation on that point, and **DECLINES** to remand the case for reconsideration of that issue.

V. *Sufficiency of the Hypothetical and the Resultant RFC Determination*

Finally, Defendant objects that the Magistrate improperly remanded the case "for the ALJ to ask the [vocational expert] a hypothetical question that included limitations of blurred vision and frequent toilet use." Def.'s Obj. at 5.

In the Report and Recommendation [23], the Magistrate noted that, while the ALJ's hypothetical question to the vocational expert "adequately dealt with depth perception, peripheral vision, and [Plaintiff's lack of] fine visual acuity," the hypothetical question did not

specifically incorporate the issue of blurred vision. R&R at 19. The Magistrate also faulted the ALJ for failing to account for side effects of Plaintiff's medication, an issue relevant to Plaintiff's claim of the need for frequent toilet use. *Id.* at 20.

In Defendant's Objections [24], Defendant notes that "[a] hypothetical question that an ALJ poses to a [vocational expert] must only include those limitations that are supported by the record." Def.'s Obj. at 6 (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987)). Defendant argues that the ALJ's hypothetical question correctly incorporated only Plaintiff's substantiated limitations, and excluded those of Plaintiff's alleged limitations that were unsubstantiated by the record. *See id.* at 5-6. As a result, Defendant concludes that "[s]ubstantial evidence supports the ALJ's determination that there was a significant number of jobs that Plaintiff could perform." *Id.* at 6.

In his Response [25], Plaintiff reiterates his position that his claims of blurred vision and the need for frequent bathroom breaks were both substantiated by the record, and thus argues that the Magistrate "properly found that the ALJ's hypothetical was lacking in regard to restrictions due to these impairments." Pl.'s Resp. at 6.

The Court reviews *de novo* Defendant's assignment of error regarding the sufficiency of the hypothetical question posed to the vocational expert, and the ALJ's resultant RFC determination. *See* 28 U.S.C. § 636(b)(1).

A hypothetical question posed to a vocational expert must incorporate only those limitations that are supported by the record. *See Varley*, 820 F.2d at 780. Following from the discussion above, this Court has determined that sufficient record evidence supported the ALJ's decision to discredit Plaintiff's claims of blurry vision.

Therefore, the issue of blurry vision having been properly excluded from the hypothetical question posed to the vocational expert, the Court **GRANTS** Defendant's Objection on the issue of the sufficiency of the hypothetical question, **REJECTS** the Report and Recommendation on that point, and **DECLINES** to remand the case for reconsideration of that issue.

Also following from the discussion above, the Court has determined that the ALJ's opinion includes insufficient analysis regarding the side effects Plaintiff alleges to suffer from his medications, his resulting need for frequent bathroom breaks, and the potential impact of

those required breaks on Plaintiff's ability to work. The record may or may not ultimately support a finding of disability based on Plaintiff's bathroom break allegations, and the issue will now be remanded for the ALJ's further consideration and explanation. If, upon remand, the ALJ finds that a substantiated limitation exists regarding the issue of bathroom breaks, then it must be determined whether that limitation was adequately incorporated into the ALJ's evaluation of Plaintiff's RFC.

Therefore, the Court **DENIES** Defendant's Objection on the issue of whether Plaintiff's alleged side effects were properly excluded from the ALJ's analysis of Plaintiff's RFC, **ADOPTS** the Report and Recommendation on that point, and **REMANDS** the case to the ALJ for further analysis or explanation of that issue.

### III. <u>CONCLUSION</u>

In summary, the Court having reviewed the administrative record, the Magistrate's Report and Recommendation, and the parties' pleadings in this case, and being fully advised in the premises,

**IT IS ORDERED** that the Report and Recommendation [23] of the Magistrate Judge is **ADOPTED IN PART** and **REJECTED IN PART**. Accordingly, both Defendant's Motion for Summary Judgment [21] and Plaintiff's cross-motion for summary judgment [22] are **GRANTED IN PART** and **DENIED IN PART**. For the reasons discussed above, the Court hereby orders as follows:

- The Court **GRANTS** Defendant's Objection on the issue of blurry vision, **REJECTS** the Report and Recommendation on that point, and **DECLINES** to remand the case for reconsideration of that issue.
- The Court **DENIES** Defendant's Objection on the issue of Plaintiff's need for frequent bathroom breaks, **ACCEPTS** the Report and Recommendation on that point, and **REMANDS** the case to the ALJ for further analysis of that issue, pursuant to the discussion above.
- The Court **DENIES** Defendant's Objection on the issue of the proper weight to be accorded to the treating physician's opinions, **ACCEPTS** the

15

   Report and Recommendation on that point, and **REMANDS** the case to the ALJ for further analysis or explanation of the issue, pursuant to the discussion above.

- The Court **GRANTS** Defendant's Objection on the issue of whether the ALJ should have recontacted the treating physician, **REJECTS** the Report and Recommendation on that point, and **DECLINES** to remand the case for reconsideration of that issue.

- The Court having found that the record sufficiently supports the ALJ's decision to discredit Plaintiff's claim of blurry vision, the Court **DETERMINES** that blurry vision was properly excluded from the hypothetical question posed to the vocational expert. Therefore, the Court **GRANTS** Defendant's Objection on the issue of the sufficiency of the hypothetical question, **REJECTS** the Report and Recommendation on that point, and **DECLINES** to remand the case for reconsideration of that issue.

- Finally, the Court **DENIES** Defendant's Objection on the issue of whether Plaintiff's alleged side effects were properly excluded from the ALJ's analysis of Plaintiff's RFC, **ADOPTS** the Report and Recommendation on that point, and **REMANDS** the case to the ALJ for further analysis or explanation of that issue.

**SO ORDERED.**

                        S/ARTHUR J. TARNOW
                        Arthur J. Tarnow
                        United States District Judge

Dated:  September 29, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2009, by electronic and/or ordinary mail.

                            S/THERESA E. TAYLOR

                            Case Manager